GRAVELIN, ADMINISTRATOR, RESPONDENT, *v.* PORIER ET AL.,
APPELLANTS.

(No. 5,929.)

(Submitted September 21, 1926.   Decided October 25, 1926.)

[250 Pac. 823.]

*Oral Contract to Adopt—Specific Performance—Jurisdiction—
Complaint — Laches — Pleading and Practice — General Ap-
pearance—Variance—Administrators—Costs.*

Appeal Briefs—Specifications of Error not Argued, Deemed Waived.
   1.   Specifications of error presented in the brief of appellant but
   not argued, will be deemed abandoned.

Practice—What may Constitute General Appearance.
   2.   Any act which recognizes a case as in court constitutes a
   general appearance; hence where defendants applied to the court
   in which a case against them was pending for an order trans-
   ferring it to another department thereof, they thereby made a
   general appearance and thus waived their right thereafter to
   assert that the court originally had no jurisdiction over their
   persons.

Specific Performance of Contract of Adoption—Nature of Action.
   3.   *Quaere:* Is an action to compel the specific performance of a
   contract of adoption one *in personam*, or one *in rem* or *quasi in rem?*

Appeal—Correct Ruling Based on Wrong Reasoning Upheld.
   4.   A correct ruling of the trial court, though based upon wrong
   reasoning must be upheld.

Specific Performance of Contract of Adoption Against Administrator—
Jurisdiction.
   5.   The district court has jurisdiction of an action against the
   administrator of an estate to compel specific performance of a
   contract of adoption entered into by his intestate; plaintiff in
   such an action claiming under the contract and adversely to the
   estate and not as an heir in privity with it, he is not required
   to proceed under sections 10324 to 10327, of the Revised Codes
   of 1921, for the establishment of heirship.

Same—Abandonment by Parent—Admission—Complaint—Sufficiency.
   6.   Where the complaint in an action to establish plaintiff's claim
   to an estate under a contract of adoption, alleged that her
   father had abandoned her, the truth of which was admitted by
   a demurrer, it was sufficient as against the contention that it did
 •  not show that he had either given his consent to the adoption
   or had been legally deprived of her custody.

Same—Complaint—Sufficiency—Inferences.
   7.   Complaint showing that when a couple adopted a child three
   years of age they were married, was sufficient as against a

---

1.   See 2 R. C. L. 178.
4.   See 2 R. C. L. 189.

claim of insufficiency on the ground that it did not allege that the parties were more than ten years older than the child; nor was the pleading rendered insufficient by failure to allege that the adopting parties were citizens of the United States.

Pleading—Amendment—Original *Functus Officio.*
8. On the filing of an amended complaint the original becomes *functus officio*, and anything done with relation to the latter becomes immaterial in the action.

Pleading and Practice—Complaint—Causes of Action not Separately Stated and Numbered—Demurrer Does not Lie.
9. The defect in a complaint that causes of action therein contained are not separately stated and numbered cannot be reached by demurrer but only by motion.

Oral Contract of Adoption—Performance—Statute of Frauds.
10. Where an oral agreement to adopt was fully performed by the mother upon surrender of the child, and thereafter by the child until the death of the adopting parties, it was taken out of the statute of frauds by full performance.

Same—Specific Performance—What not Laches.
11. Where husband and wife jointly agreed to adopt a child and upon their death to leave her a child's share in the estate, and the husband's death occurred four years before that of his wife, an action for the specific performance of the contract brought about a year and a half after the death of the wife against the administrator of her estate was not barred by laches, since plaintiff could not assert a claim against the estate until it was created by the death of both of them.

Same—Specific Performance—Showing Required.
12. An oral agreement to adopt should be enforced only upon a satisfactory showing that it was definite, certain and just, and where the proof of the agreement rests largely upon oral testimony of interested parties as to conversations had a third of a century before the trial, the testimony should be scrutinized with peculiar care.

Equity—Findings—When Conclusive.
13. Findings of the court in an equity case based upon conflicting evidence, will not be disturbed on appeal unless there is a decided preponderance of the evidence against them, nor when the evidence, fully considered, furnishes reasonable grounds for different conclusions, the burden of showing insufficiency of the evidence to support them being upon the party asserting it.

Oral Contract of Adoption — Specific Performance — Evidence — Sufficiency.
14. Evidence reviewed and *held* sufficient to warrant the court's findings in favor of plaintiff's claim in her action to compel the specific performance of a contract to adopt and leave her a child's share in the estate of the adopting parties.

Same—Variance—What Does not Constitute.
15. Where the complaint alleged an agreement, on the part of husband and wife to make a will, in favor of an adopted child, but also all the elements of a contract to adopt, with the accompanying right to take a child's share of the estate (the adopting parties having no children of their own), evidence on the part of plaintiff that such parties had agreed that when they

---

10. Specific performance of oral contract of adoption which has been performed or partly performed, see note in 27 A. L. R. 1340.

should die the child should have everything they had, did not create a variance between pleading and proof.

**Same—Failure of Consideration—Evidence Held not to Show.**
16. Evidence *held* not to show that the consideration for the agreement to adopt had failed, in that because of her conduct the child had forfeited her right to the property of the adopting parties.

**Costs—When Administrator not Personally Liable for Costs of Action.**
17. Where an administrator in an action for the specific performance of an agreement to adopt was made a defendant only in his representative capacity to enable the court in rendering judgment to direct the disposition of the property of the estate in his hands, an award of costs against him personally was improper.

---

[1] Appeal and Error, 3 **C. J.,** sec. 1591, p. 1428, n. 53; 4 **C. J.,** sec. 3057, p. 1069, n. 23.

[2] Appearances, 4 **C. J.,** sec. 32, p. 1340, n. 95 New.

[3] Appeal and Error, 4 **C. J.,** sec. 2541, p. 649, n. 36. Appearances, 4 **C. J.,** sec. 27, p. 1333, n. 1. Evidence, 22 **C. J.,** sec. 46, p. 103, n. 70.

[4] Appeal and Error, 4 **C. J.,** sec. 2557, p. 663, n. 92.

[5] Courts, 15 **C. J.,** sec. 418, p. 994, n. 7. Descent and Distribution, 18 **C. J.,** sec. 121, p. 870, n. 2 New.

[6] Adoption of Children, 1 **C. J.,** sec. 75, p. 1386, n. 31. Evidence, 22 **C, J,,** sec. 68, p. 128, n. 83. Pleading, 31 **Cyc.,** p. 333, n. 76.

[7] Specific Performances, 36 **Cyc.,** p. 773, n. 52.

[8, 9] Pleading, 31 **Cyc.,** p. 92, n. 97; p. 93, n. 98; p. 278, n. 84; p. 465, n. 29; p. 648, n. 15.

[10] Adoption of Children, 1 **C. J.,** sec. 27, p. 1379, n. 10. Frauds, Statute of, 27 **C. J.,** sec. 97, p. 180, n. 11; sec. 388, p. 302, n. 23, 24; sec. 436, p. 356, n. 15. Specific Performances, 36 **Cyc.,** p. 737, n. 53.

[11] Specific Performances, 36 **Cyc.,** p. 721, n. 85.

[12, 13] Adoption of Children, 1 **C. J.,** sec. 27, p. 1379, n. 12; sec. 28, p. 1379, n. 17. Appeal and Error, 4 **C. J.,** sec. 2727, p. 777, n. 61; sec. 2868, p. 898, n. 90; sec. 2870, p. 901, n. 2. Specific Performances, 36 **Cyc.,** p. 588, n. 76; p. 612, n. 74; p. 737, n. 54; p. 784, n. 15 New.

[14] Specific Performances, 36 **Cyc.,** p. 784, n. 15 New.

[15] Specific Performances, 36 **Cyc.,** p. 786, n. 22.

[16] Equity, 21 **C. J.,** sec. 190, p. 200, n. 6, 11. Specific Performances, 36 **Cyc.,** p. 784, n. 15 New.

[17] Executors and Administrators, 24 **C. J.,** sec. 2282, p. 917, n. 10.

*Appeal from District Court, Silver Bow County, in the Second Judicial District; George B. Winston, Judge of the Third District, presiding.*

SUIT by Anna Gravelin against Marie Porier and others, in which Joseph N. Gravelin, administrator of the estate of Anna Gravelin, deceased, was substituted as plaintiff. Judgment for plaintiff, and defendants appeal. Affirmed.

[77 Mont. 260.]

*Mr. J. E. Healy,* for Appellant John Lindsay, Administrator, and *Mr. A. C. McDaniel,* for Appellants Marie Porier *et al.,* submitted a brief, and argued the cause orally.

The court erred in denying the motion to quash the *alias* summons and the service thereof for the reasons stated in the motion. This is an action *in personam* and not an action *in rem,* and is not an action in which service of summons and complaint may be made by substituted service. It is generally held that an action for the specific performance of a contract is an action *in personam.* The complaint shows that the action is based entirely upon the idea of compelling certain persons to do some certain thing. The following cases show what is an action *in personam,* and that service of process must be personal: *Silver Camp Min. Co.* v. *Dickert,* 31 Mont. 488, 3 Ann. Cas. 1000, 67 L. R. A. 940, 78 Pac. 965; *Johnston* v. *Wadsworth,* 24 Or. 494, 34 Pac..13; *Mott* v. *Coddington,* 1 Abb. Pr., N. S., 290; *Lindsley* v. *O'Reilly,* 7 Am. St. Rep. 802, 1 L. R. A. 79, 50 N. J. L. 636, 15 Atl. 379; *Close* v. *Wheaton,* 65 Kan. 830, 70 Pac. 891; *Merrill* v. *Beckwith,* 163 Mass. 503, 40 N. E. 855; *Hearst* v. *Kuykendall,* 16 Tex. 327; *Edwards* v. *McClave,* 55 N. J. Eq. 822, 35 Atl. 829; *First National Bank* v. *Henry,* 156 Ind. 1, 58 N. E. 1057; *Cross* v. *Armstrong,* 44 Ohio St. 613, 10 N. E. 160; *Massie* v. *Watts,* 10 U. S. (6 Cranch) 148, 3 L. Ed. 181 [see, also, Rose's U. S. Notes]; *McQuerry* v. *Gilliland,* 89 Ky. 434, 7 L. R. A. 454, 12 S. W. 1037; *State* v. *Court,* 7 Wash. 306, 34 Pac. 1103; *Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565 [see, also, Rose's U. S. Notes]; *Dull* v. *Blackman,* 169 U. S. 243, 42 L. Ed. 733, 18 Sup. Ct. Rep. 333 [see, also, Rose's U. S. Notes]; *State* v. *Court,* 40 Mont. 173, 105 Pac. 554. The *Cross-Armstrong Case,* above, goes very fully into the subject.

Where it appears that persons claiming to be heirs are nonresidents of the United States a proceeding to determine heirship is mandatory, and in this way alone can the heirs of the estate be legally found and authoritatively ascertained.

(*State* v. *District Court,* 62 Mont. 60, 203 Pac. 860.) The proceedings must be in the estate and the "petition must be in the matter of such estate." (Sec. 10324 *et seq.* Rev. Codes 1921.) The only proper procedure for the pressing of the case of the plaintiff is in distribution proceedings in the probate court in the estate of Euphemie Vautour, deceased. (*Taggart's Estate,* 190 Cal. 493, 27 A. L. R. 1360, 213 Pac. 504; *In re Sharon's Estate,* 179 Cal. 447, 177 Pac. 283; *Odenbreit* v. *Utheim,* 131 Minn. 56, L. R. A. 1916D, 421, 154 N. W. 741.)

"Public policy requires that claims against the estate of the dead should be established by very satisfactory evidence, and the courts should see to it that such estates are fairly protected against unfounded and rapacious raids." (*Van Slooten* v. *Wheeler,* 140 N. Y. 624, 35 N. E. 583.) Speaking again of this character of case this court also says: "Such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises." Again, "They are the natural resort of unscrupulous persons who wish to despoil the estate of decedents. While such contracts are sometimes enforced by the courts, it is only when they have been established by evidence so strong and clear as to leave no doubt and when such result of enforcing them would not be inequitable or unjust. Such contracts are dangerous. They threaten the security of estates," *etc.* (*Hamlin* v. *Sevens,* 177 N. Y. 39, 69 N. E. 118; *Ide* v. *Brown,* 178 N. Y. 26, 70 N. E. 101; *Quock Ting* v. *United States,* 140 U. S. 417, 35 L. Ed. 501, 11 Sup. Ct. Rep. 733 [see, also, Rose's U. S. Notes]; *Gall* v. *Gall,* 64 Hun, 600, 19 N. Y. Supp. 332, affirmed, 138 N. Y. 675, 34 N. E. 515; *Grantham* v. *Gossett,* 182 Mo. 651, 81 S. W. 895; *Frederick* v. *Michaelson,* 138 Wash. 55, 244 Pac. 119.) "Where the contract relied upon is oral, it is said that the evidence must be overwhelming in its probative force, leaving no room for reasonable doubt." (1 C. J. 1380, note 20; *Wiseman* v. *Guernsey,* 107 Neb. 647, 187 N. W. 55.)

Oral declarations that declarant had adopted one as his heir are insufficient to show a legal adoption which can only be made as provided by statute. (*Powell* v. *Ott* (Tex. Civ. App.), 146 S. W. 1019.) A parol adoption is not sufficient, nor is an adoption effected by the surrender of the custody of the child, nor by merely recognizing and referring to the child as an adopted child. (1 C. J. 1373, notes 31, 32, 33 and 34, and cases cited in these notes.) The character and habits of the persons involved are important facts to be considered in weighing the evidence. (*Wales* v. *Holden*, 209 Mo. 552, 108 S. W. 89.)

A parol agreement, under which a child went to reside in the family of a person, that, if the child's parents would allow such person to adopt the child, he would take her to his home, and when he died she should have his property as though she were his own daughter, is within the statute of frauds, part of the property left by him being land, and the contract being entire. (*Grant* v. *Grant*, 63 Conn. 530, 38 Am. St. Rep. 379, 29 Atl. 15; *Kling* v. *Bordner*, 65 Ohio St. 86, 61 N. E. 148; *Pond* v. *Sheean*, 132 Ill. 312, 8 L. R. A. 414, 23 N. E. 1018; *Austin* v. *Davis*, 128 Ind. 472, 25 Am. St. Rep. 456, 12 L. R. A. 120, 26 N. E. 890; *Hamilton* v. *Thirston*, 93 Md. 213, 48 Atl. 709; *In re Kessler's Estate*, 87 Wis. 660, 41 Am. St. Rep. 74, 59 N. W. 129; *Dicken* v. *McKinley*, 163 Ill. 318, 54 Am. St. Rep. 471, 45 N. E. 134; *Fuller* v. *Fuller*, 219 Pa. 163, 68 Atl. 45.)

A contract to make a will, if in parol, must be established by the testimony of disinterested witnesses. (*Hamlin* v. *Stevens*, 177 N. Y. 39, 69 N. E. 118; *Peterson* v. *Bauer's Estate*, 76 Neb. 652, 107 N. W. 993, 111 N. W. 361; *Hanley* v. *Hanley*, 105 App. Div. 335, 93 N. Y. Supp. 864; *Gall* v. *Gall*, 64 Hun, 600, 19 N. Y. Supp. 332; affirmed, 138 N. Y. 675, 34 N. E. 515.)

Statements of an intention to make a will do not amount to a contract. (*Mitchell* v. *Pirie*, 38 Wash. 691, 80 Pac. 774;

*Hinton* v. *Gano,* 6 Ky. Law Rep. 526; *Van Horn* v. *Demarest,* 76 N. J. Eq. 386, 77 Atl. 354; *Wilmer* v. *Borer,* 4 Kan. App. 109, 46 Pac. 181; *Gall* v. *Gall,* 64 Hun, 600, 19 N. Y. Supp. 332; affirmed, 138 N. Y. 675, 34 N. E. 515; *Gross* v. *Newman's Admr.,* 20 Ky. Law Rep. 1910, 50 S. W. 530.)

*Mr. William Meyer,* for Respondent, submitted a brief, and argued the cause orally.

Counsel take the position that if we do not prove an adoption then our cause of action must fail. In answer to this, we call attention to the case of *Burns* v. *Smith,* 21 Mont. 251, 69 Am. St. Rep. 653, 53 Pac. 742, which is on all fours with the case at bar. The allegation in our complaint follows the allegations contained in the complaint of *Burns* v. *Smith,* which complaint was attacked by the same objections as are made to the amended complaint in this action, and which objections were each and all overruled. This case has never been overruled or reversed, but has stood the test for twenty-eight years, during which time it has been cited as an authority by many of the leading courts of the country, and the doctrine therein announced repeatedly approved. We also call the court's attention to the case of *Horton* v. *Troll,* 183 Mo. 677, 167 S. W. 1081, a case which is likewise in point.

The following cases are all cases wherein an oral contract, such as the one here in question, was specifically enforced: *Owens* v. *McNally,* 113 Cal. 444, 33 L. R. A. 369, 45 Pac. 710; *Stewart* v. *Smith,* 6 Cal. App. 152, 91 Pac. 667; *Teske* v. *Dittberner,* 70 Neb. 544, 113 Am. St. Rep. 802, 98 N. W. 57; *Barry* v. *Beamer,* 8 Cal. App. 200, 96 Pac. 373; *Nowack* v. *Berger,* 133 Mo. 24, 54 Am. St. Rep. 663, 31 L. R. A. 810, 34 S. W. 489; *Starnes* v. *Hatcher,* 121 Tenn. 330, 117 S. W. 220; *Horton* v. *Troll,* 183 Mo. App. 677, 167 S. W. 1081; *Steinberger* v. *Young,* 175 Cal. 81, 165 Pac. 432; *Thomas* v. *Maloney,* 142 Mo. App. 193, 126 S. W. 522; *Clayton* v. *Order of Heptasophs,* 130 Md. 31, 99 Atl. 949, 952; *Tuttle* v. *Winchell,* 104 Neb. 750, 11 A. L. R. 814, 178 N. W. 755. Other cases wherein

the facts are quite similar to the facts in the case at bar, and where the rule of *Burns* v. *Smith* was upheld, are: *Rogers* v. *Schlotterback*, 167 Cal. 35, 138 Pac. 728 (very important. On page 735, second column, holds that no claim need be filed); *Barney* v. *Hutchinson*, 25 N. M. 82, 177 Pac. 890; *Teske* v. *Dittberner*, 70 Neb. 544, 113 Am. St. Rep. 802, 98 N. W. 57; *Nowack* v. *Berger*, 133 Mo. 24, 54 Am. St. Rep. 663, 31 L. R. A. 810, 34 S. W. 489; *Starnes* v. *Hatcher*, 121 Tenn. 330, 117 S. W. 220; *Anderson* v. *Blakesly*, 155 Iowa, 430, 136 N. W. 210. See, also, *Chehak* v. *Battles*, 133 Iowa, 107, 12 Ann. Cas. 140, 8 L. R. A. (n. s.) 1130, 110 N. W. 330; *Oles* v. *Wilson*, 57 Colo. 246, 141 Pac. 489; *Hood* v. *McGehee*, 189 Fed. 205, 208, affirmed in 199 Fed. 989, 117 C. C. A. 664, and 237 U. S. 611, 59 L. Ed. 1144, 35 Sup. Ct. Rep. 718 [see, also, Rose's U. S. Notes]; *Barrett* v. *Miner et al.*, 119 Misc. Rep. 230, 196 N. Y. Supp. 175; *Prince* v. *Prince*, 194 Ala. 455, 69 South. 906. See, also, *Steinberger* v. *Young*, 175 Cal. 81, 165 Pac. 432, in which the supreme court of California also held that the plaintiff was not guilty of laches.

*Thomas* v. *Maloney*, 142 Mo. App. 193, 126 S. W. 522, is a case on all fours with the case at bar. There the agreement was silent as to the disposition of the property of the adopting parents, nevertheless the supreme court of Missouri held that the child was entitled to specifically enforce the agreement to give her a child's share of the property. This case was decided much later than *Grantham* v. *Gossett*, 182 Mo. 651, 81 S. W. 895, upon which appellants place so much reliance.

A footnote to the case of *Baumann* v. *Kusian*, 164 Cal. 582, 44 L. R. A. (n. s.) 756, 129 Pac. 986, covers in its entirety the law here under discussion. *Tuttle* v. *Winchell*, 104 Neb. 750, 11 A. L. R. 814, 178 N. W. 755, is another case on all fours with the case at bar. The same points which are here raised were likewise there urged, even to the point that the child there adopted was disobedient and insolent. (See, also, *Popejoy* v. *Boynton*, 112 Or. 646, 229 Pac. 370, 230 Pac. 1016.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment of the district court of Silver Bow county awarding to, and directing the administrator of the estate of Euphemie Leger Vautour, deceased, to turn over to, the plaintiff all of the property of said estate, after deducting the amount of the debts of the deceased and the expense of administration.

On October 27, 1923, one Anna Gravelin filed in the district court of Silver Bow county a complaint in which she named all of the individual defendants herein as heirs at law of Euphemie Leger Vautour. The complaint alleged that Rosamund Vautour died in 1918, leaving his wife, Euphemie, surviving him, and that all of the property acquired by either of them then stood in the name of the wife. It is then alleged that the wife died on the fourteenth day of April, 1922, leaving an estate consisting of real and personal property in Silver Bow county, and that the individual defendants would take said property as the heirs at law of Euphemie Leger Vautour, except for the agreement set up in the complaint. The complaint then alleges that the plaintiff was born in 1889 and came, with her mother, to the home of the Vautours in 1890, where she lived for a period of two years, when the mother entered into an agreement with the Vautours that she would yield the care, custody and control of said child to the Vautours in consideration of their agreement to adopt said child, care for her, educate her, and treat her as their own child and would each make a will leaving to said child the share in their property which a natural child would receive, and that she "would receive a child's share in their estate" at their death. The complaint alleges that the father of said child had deserted the mother and child, and that at the time the agreement was made his whereabouts was unknown and that the mother was the guardian of the child.

[77 Mont. 260.]

It is further alleged that the mother and child performed all the conditions of the agreement, and that the Vautours did receive the child and care for her, educate her, exercise custody and control over her, and lavish affection upon her, and, in fact, treat her as their own child until she became of age; that plaintiff was given and took the name of Anna Vautour and addressed the Vautours as father and mother, and rendered service, obedience and affection to them in the same manner as would a natural child.

It is then alleged that the Vautours failed to evidence the adoption in the manner and form prescribed by law, which fact was not known to plaintiff and her mother until after the death of Rosamund Vautour, and that each of the Vautours failed to leave a will as agreed. The prayer of the complaint is that the court enforce the contract of adoption, declare the defendants holders of the estate in trust for the plaintiff, and decree that the plaintiff is entitled to the distribution of the whole estate.

Summons having been issued and returned unserved for the reason that none of the defendants resided within the jurisdiction of the court, an *alias* summons was secured and publication thereof made in the manner prescribed by law. The affidavit for publication of summons gives the last-known residence of all defendants, and shows that most of them were residents of Canada, and the others of states other than Montana.

The defendants named in the original complaint appeared by counsel and duly moved to quash the service on the ground and for the reason that all of the defendants were nonresidents of the state of Montana and the action was one *in personam,* in which service by publication could not confer jurisdiction of the persons of defendants on the court. This motion was overruled, and the defendants saved their exception to the ruling, and thereafter a bill of exceptions thereon was duly served, settled and allowed. Thereupon the defendants moved the court that the plaintiff be required to separately state

and number her alleged causes of action, to-wit: (1) For the specific performance of a contract of adoption; (2) on a contract to make a will; and (3) to have plaintiff declared the owner of and entitled to the entire estate. This motion was denied, and a bill of exceptions thereon settled and allowed.

Thereafter the plaintiff filed herein an amended complaint, being the same as the original complaint except that John Lindsay, as administrator of the estate of Euphemie Leger Vautour, was made a defendant. No motion was made either by the original defendants or the defendant administrator to require the plaintiff to separately state and number the alleged separate causes of action set out in the amended complaint, but by separate demurrer John Lindsay and the individual defendants challenged the sufficiency of the complaint upon the grounds: (1) That it did not state facts sufficient to constitute a cause of action; (2) that causes of action were improperly united therein; and (3) that it was ambiguous and unintelligible in the particulars stated. These demurrers were overruled, and thereafter the defendants answered, denying the allegations of the complaint and affirmatively alleging laches, the statute of frauds, and the statute of limitations. Replies were filed denying the affirmative allegations of the answers, and issue thus joined November 10, 1924. In July, 1925, the plaintiff died and thereafter the administrator of her estate was substituted as plaintiff.

The cause was tried on October 30, 1925, Hon. George W. Winston, of the third judicial district, presiding. At the opening of the trial defendants objected to the introduction of any evidence on the ground that the court was without jurisdiction and that the complaint did not state facts sufficient to constitute a cause of action. These objections were overruled, and both sides introduced evidence, and at the close of the trial the court took the matter under advisement, and later made findings of fact and conclusions of law on all points raised in the pleadings and in the evidence, in favor of plaintiff. Judgment followed in accordance with the findings and the prayer

of the complaint, and from this judgment the defendants have appealed.

There is but one appeal before us, the notice of which is signed jointly by counsel for John Lindsay, as administrator, and counsel for the individual defendants, and recites that "the defendants hereby jointly and severally appeal" from the judgment. A joint brief was filed in which, however, such joining counsel separately specify error. Counsel for the administrator has numbered his specifications successively from 1 to 11, but No. 11 predicates error upon nine findings of the court, merely designating them by number, and upon the action of the court "in making each and all of the conclusions of law set forth," while counsel for the individual defendants makes seventeen specifications of error raising the same and additional questions. Having thus defined the issues on appeal, counsel again get together in a joint argument, which, however, deals only with certain of the questions presented by the specifications of error, does not refer directly to any of those specifications, and so mingles the presentment of the points involved that we have found it rather difficult to follow many of the arguments presented to their ultimate conclusion.

Counsel for plaintiff complains in his brief, rather bitterly of this treatment of the matter, and we here call attention of the profession thereto in the hope that a more strict adherence to the rules of this court respecting the preparation of briefs will be indulged in in the future.

From a careful reading of appellants' brief we conclude [1] that only the questions hereinafter discussed are relied upon, and that those questions presented by specifications of error, but not thereafter argued, have been abandoned. (*Stephenson* v. *Home Ins. Co.,* 67 Mont. 193, 214 Pac. 955; *National Cash Register Co.* v. *Wall,* 58 Mont. 60, 190 Pac. 135; *Biering* v. *Ringling,* 74 Mont. 176, 240 Pac. 829.)

1. The first question presented by defendants is as to the [2] jurisdiction of the persons of the defendants. The bill

of exceptions thereon discloses that the written motion and
notice of motion were served and filed on December 14, 1923,
by counsel, whose appearance for the defendants is not and
cannot be questioned. The notice of motion advised counsel
for the plaintiff that counsel for the defendants would, on
the twenty-second day of December, 1923, at 9:30 A. M. or
as soon thereafter as counsel could be heard, "at department
No. 1 of said court," move the court to quash the service. It
further appears from said bill of exceptions that, under the
rules of court in the district, this cause was "allotted" to
Department No. 1, and that on the twentieth day of December,
1923, or two days before said motion was to be heard in that
department, the following order was entered in the minutes of
Department No. 1:

"This day, on application of counsel for defendants and
for convenience, this case was by the court ordered transferred
to department No. 2 of this court, Hon. William E. Carroll,
judge presiding, for all further hearings and trial.

"JOSEPH R. JACKSON, Judge."

On December 29, 1923, counsel for defendants, with counsel
for plaintiff, appeared in Department No. 2 and presented the
motion, which was thereupon taken under advisement by Judge
Carroll, who, on March 8, 1924, entered his order in the journal
of Department No. 2, denying the motion, and therein, "on
the court's own motion," granted the defendants leave to pre-
pare, serve and file their bill of exceptions to this ruling
"without waiver of any rights and without requiring any
general entry of appearance for that purpose," and also on
the court's own motion granted defendants ten days' time in
which to "enter an appearance and plead to the complaint."

While counsel for defendants earnestly contend that this
[3] action is purely *in personam,* and counsel for plaintiff
as earnestly contends that, under the facts shown in the com-
plaint, the action is *in rem* or *quasi in rem,* and that, under
the authority of *Gassert* v. *Strong,* 38 Mont. 18, 98 Pac. 497,
jurisdiction was acquired by substituted service, we are not now

called upon to determine the question, and it is specifically reserved.

Before answering defendants' contention, counsel for plaintiff submits that, by applying to the court before which the cause was pending for an order transferring the case to another department, defendants made a general appearance and thereby waived their right to assert that the court originally had no jurisdiction over their persons. With this contention we are forced to agree.

"When a defendant desires to challenge the jurisdiction of the court over his person on the ground that there has been no valid service of summons, he must restrict his challenge to that ground only, and keep out of court for all other purposes." (*Hinderager* v. *MacGinniss,* 61 Mont. 312, 202 Pac. 200.) If a defendant appears and asks for any relief which could only be given to a party in a pending case, it is a general appearance. (2 Ency. Pl. & Pr. 632; *Zobel* v. *Zobel,* 151 Cal. 98, 90 Pac. 191.)

Where defendant's counsel, who had appeared specially for the purpose of moving to quash and, on the overruling of his motion, asked for additional time in which to answer on the merits, such application was held to constitute a general appearance and waive the objection to the jurisdiction of the court (*State ex rel. Mackey* v. *District Court,* 40 Mont. 359, 135 Am. St. Rep. 622, 106 Pac. 1098); and where a respondent, as part of his motion to quash, requested that the time for appearance, demurrer, or answer be extended to the end that he need take no further action until his motion should have been passed upon by the court, such request was held to be a waiver of the question of jurisdiction (*State ex rel. Carroll* v. *District Court,* 69 Mont. 415, 222 Pac. 444).

This rule applies where a defendant appeals from a judgment rendered in a justice court (*Gage* v. *Maryatt,* 9 Mont. 265, 23 Pac. 337), on moving for a change of venue (*Feedler* v. *Schroeder,* 59 Mo. 364; *Jones* v. *Jones,* 59 Or. 308, 117 Pac. 414), or entering into a stipulation for a change of place of

trial (*Jones* v. *Wolverton,* 15 Wash. 590, 47 Pac. 36), and on filing an affidavit of prejudice of the presiding judge (*Howe* v. *Sieberling,* 2 Ohio N. P. 8, 2 Ohio Dec. 51). In fact, any act which recognizes the case as in court constitutes a general appearance, and even in the face of a declared contrary intention, a general appearance "may arise by implication from the defendant seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to the plaintiff," other than one contesting only the jurisdiction of the court. (4 C. J., p. 1333.) The reason for the rule is that an application for an order of the court can only be made upon the assumption that the court has jurisdiction to make the order, and a party cannot be challenging the jurisdiction and invoking it at one and the same time.

Here it must be presumed that the defendants sought to derive some benefit from the order of transfer or they would not have applied for the order; for some reason which was considered sufficient by counsel for the defendants, they invoked the jurisdiction of the court, and it is immaterial that such application was made orally. (*Zobel* v. *Zobel,* above; *Honeycutt* v. *Nyquist,* 12 Wyo. 183, 109 Am. St. Rep. 975, 74 Pac. 90.) Such an application falls within the same category as a motion for a change of venue—the change of the place of trial—or the disqualification of the presiding judge, mentioned above; it constituted a general appearance and waiver of the objection to jurisdiction of the person.

Defendants urge that the order made by Judge Carroll shows that he ruled upon the merits of the motion and did not consider the application in question a general appearance. All that we gather from the language used by Judge Carroll is that he sought to protect the rights of the defendants under their motion in the event his ruling was erroneous; he merely guarded against any act of the defendants which might thereafter be construed as a general appearance. The act which constituted such appearance was committed before Judge [4] Carroll appeared in the case, and, whatever his reason

for the ruling, he ruled correctly; if based upon wrong reasoning, the ruling must still be upheld. (*Claussen* v. *Chapin,* 69 Mont. 205, 221 Pac. 1073;. *Outlook F. E. Co.* v. *American Surety Co.,* 70 Mont. 8, 223 Pac. 905.)

2. Defendants next contend that the court was without jurisdiction to render the judgment appealed from. Their contention as to jurisdiction over their persons, under which counsel discuss the treaty rights of citizens of the Dominion of Canada, has already been disposed of; but they contend further that this is a matter involving the rights of heirs to an estate, and that, while the complaint attempts to fix defendants as the only heirs of Euphemie Leger Vautour, it does not show that they are the only heirs of said deceased and that plaintiff is seeking to establish their heirship to the entire estate, and that for these reasons an action for the establishment of heirship, under the provisions of sections 10324 to 10327 of the Revised Codes of 1921, "within the probate matter," is the only method by which the plaintiff can proceed.

It would seem that the decision of this court in *Burns* v. *Smith,* 21 Mont. 251, 69 Am. St. Rep. 653, 53 Pac. 742, is a complete answer to this contention. Counsel, however, asserts that this decision is not opposed to their contention "when considered in the light of the amendatory legislation cited and relied upon in the *Rubin Case*" (*State ex rel. Rubin* v. *District Court,* 62 Mont. 60, 203 Pac. 860), and that a contrary rule was announced after the decision in *Burns* v. *Smith,* in the cases of *Kirk* v. *Baker,* 26 Mont. 190, 66 Pac. 942, and *In re Colbert's Estate,* 51 Mont. 455, 153 Pac. 1022.

In the *Rubin Case* this court held that ordinarily proceedings to determine heirship under section 7670, of the Revised Codes of 1907, are not necessary as a condition precedent to distribution, but that, under the provisions of section 7673, as amended by Chapter 54, Laws of 1913, whenever it appears from the files and record of an estate matter that there are persons claiming to be heirs or claiming a right to share in said estate who are nonresidents of the United States, the court must

determine heirship in such a proceeding before decreeing distribution. This decision was rendered in an action wherein a citizen of a foreign country was claiming to take under the laws of descent as the mother of the deceased.

In *Kirk* v. *Baker,* the plaintiffs sought to establish interests in privity of the estate, and through alleged heirs of the deceased; while in the *Colbert Case* the plaintiff sought directly to establish heirship in privity with and within the estate; the action was prosecuted under the provisions of the statute for establishing heirship, and the language relied upon by counsel was employed in holding that a former abortive attempt by the plaintiff to maintain a civil action for the same purpose did not warrant the admission of depositions taken in such civil action, as no court of the state could have had jurisdiction of the action, since the sections quoted must be held to be exclusive. Taken literally and interpreted as counsel for defendants would have us construe the opinion, it would bar the determination of all questions as to whom there should be a distribution of an estate in any other manner than that prescribed in section 10324 of the Revised Codes of 1921, and would be contrary to the holding in the *Rubin Case* above, as well as that in *Burns* v. *Smith.* We do not, however, so interpret the language used in the *Colbert Estate Case,* or that of other decisions of like tenor; it applies to the facts presented in the given case only and those in which the facts are the same or similar, and must be interpreted in the light of those facts and limited in its scope to a situation like unto the one there presented. (*Hunt* v. *S. Y. Cattle Co.,* 75 Mont. 594, 244 Pac. 480.)

It is significant that the Colbert decision does not mention the case of *Burns* v. *Smith;* had this court there intended to announce a rule contrary to its former holding, on facts which it deemed analogous, such mention would have been made and the former decision distinguished or overruled; its reason for not so doing is apparent. In the case of *Burns* v. *Smith* the contention now under consideration was made, and the case of

*In re Burton's Estate,* 93 Cal. 459, 29 Pac. 36, was cited as supporting defendant's position, just as here the case of *In re Colbert's Estate* is cited. In the matter of *Burton's Estate* parties sought, as in the matter of the *Colbert Estate* and in the case of *Kirk* v. *Baker,* to establish an interest in privity with the estate. In distinguishing the *Burton Case* from that under consideration, this court, in the case of *Burns* v. *Smith,* said: "In *Re Burton's Estate,* we find the court, * * * uses this language in construing the statute quoted above: 'But the provisions of the section are carefully limited to the ascertainment and determination of rights and interests claimed in privity with the estates, and are not applicable to rights or titles claimed adversely to such estates.'" Applying the rule thus laid down to the facts before it, and which facts are analogous to those now under consideration, the court continued: "Whatever claim she [the plaintiff] has, we think, results and comes to her under and through the contract alleged to have been made with the deceased." It is true that the court then declared that the question as to whether plaintiff claimed in privity with the estate or adversely thereto was not of paramount importance, as the provisions for the proceeding now found in sections 10324 to 10326 were not exclusive; but again we must read the decision in the light of the facts which the court then had under consideration.

The distinction between such cases as *Kirk* v. *Baker* and *In re Colbert's Estate,* and such cases as *Burns* v. *Smith* and the case now under consideration, is that, in the first class of cases, the endeavor made is to establish a right to take in privity with the estate as an heir at law or through such an heir, while in the second class of cases the attempt is to establish a right adverse to the heirs at law and adverse to the estate; in the first class of cases the proceeding prescribed must be followed in order that the executor or administrator may be advised in the probate proceeding, and before distribution, as to whom he shall recognize in the payment of money or the delivery of property; in the second class of cases this necessity

does not appear, and the claimant is not precluded by the provisions of those sections from maintaining an independent action. The right to maintain such an action is upheld, and the above distinction, more or less clearly stated, is recognized in the following cases:

*McCabe* v. *Healy,* 138 Cal. 81, 70 Pac. 1008, and *Furman* v. *Craine,* 18 Cal. App. 41, 121 Pac. 1007, citing, among numerous other cases, that of *Burns* v. *Smith,* and in which it is held that statutory provisions such as those here cited have no application, and that the administrator of an estate is not even a proper party defendant unless some affirmative relief is sought against him. In the latter case a large number of authorities to the same effect are assembled.

*Hickox* v. *Johnston,* 113 Kan. 99, 27 A. L. R. 1322, 213 Pac. 1060, is practically on all fours with this case, and declares that a court of equity has power to enforce the contract and impress the property with a trust.

In *Anderson* v. *Blakesley,* 155 Iowa, 430, 136 N. W. 211, the right to maintain such an action is upheld, and *Burns* v. *Smith* cited among other cases in support thereof; this case follows *Chehak* v. *Battles,* 133 Iowa, 107, 12 Ann. Cas. 140, 8 L. R. A. (n. s.) 1130, 110 N. W. 330, involving an agreement to adopt and wherein the court uses this significant language: "The agreement * * * stipulated that plaintiff should 'acquire all the rights of inheritance by law.' This was equivalent to saying she should share in their estate as though their own child, but not as such."

In this action the provisions of our Code for the establishment of heirship are not controlling, and no error was committed in assuming jurisdiction of the cause.

3. It is next asserted that the complaint herein does not [6] state facts sufficient to constitute a cause of action, in that it does not show that the father of the child either gave his consent to her adoption or was legally deprived of her custody. Counsel rely upon *State ex rel. Thompson* v. *District Court,* 75 Mont. 147, 242 Pac. 959, but seem to labor under

the mistaken idea that, under the decision, so long as a parent lives his or her child cannot be legally adopted without the consent of such parent. The statute there discussed contains several exceptions to its provision requiring the consent of the parent, among them when such parent has ''in this or any other state, willfully abandoned a child.'' (Sec. 5859, Rev. Codes 1921.) In that case, as here, it was alleged that the parent named had so abandoned the child, and there we said: ''If this allegation be true, her consent was not necessary; but before a valid order of adoption could be made without her consent, the court must have determined that she had abandoned the child. * * * '' Here, for the purposes of this determination, the demurrer admitted the truth of the allegation. It is true that the above decision declared that the missing parent must be notified of the adoption proceeding, but that would be merely a matter of procedure in that proceeding, and we must assume that such steps would have been taken had such proceeding been commenced. The complaint was not deficient in this respect.

It is asserted that it does not appear from the complaint [7] that the Vautours, husband and wife, were more than ten years older than the child, but this assertion is rather weak; it appears that they were married, and that the agreement was entered into when the child was but three years old.

Again, it is claimed that it is not alleged that the Vautours were capable of adopting the child, as it does not appear that they were citizens of the United States. It is true that the complaint is silent in this respect, but it is one that could have been obviated by the Vautours, and, under their agreement to adopt, if not then citizens, it was their duty to become such in order to carry out their agreement as made.

4. It is next contended that the complaint is bad in that [8, 9] three separate causes of action are united therein. While certain defendants attacked the original complaint by motion to require the plaintiff to separately state and number these alleged different causes of action, the amended or sup-

plemental complaint is attacked only by demurrer. On filing this substituted pleading the original became *functus officio,* and what took place theretofore as to that complaint became immaterial in this action. It is not contended that the complaint states causes of action which could not be united if separately stated and numbered, and the defect thus asserted cannot be reached by demurrer, but can be reached only by motion. (*Marcellus* v. *Wright,* 51 Mont. 559, 154 Pac. 714; *Roberts* v. *Sinnott,* 55 Mont. 369, 177 Pac. 252; *Jorud* v. *Woodside,* 63 Mont. 23, 206 Pac. 344.)

5. As an additional ground on which counsel contended the trial court should have sustained their demurrer, they assert that the complaint is ambiguous and unintelligible, in that they cannot determine therefrom the theory on which plaintiff claims a right to recover. There is no merit in this contention; the complaint is couched in plain, intelligible English. It contains "a statement of the facts constituting the cause of action, in ordinary and concise language," with "a demand of the relief which the plaintiff claims" (sec. 9129, Rev. Codes 1921), and nothing more.

6. The defendants alleged affirmatively that the agreement [10] pleaded falls within the statute of frauds; the evidence discloses that the agreement was not in writing.

Section 10613, Revised Codes of 1921, provides that: "In the following cases the agreement is invalid, unless the same or some note or memorandum thereof be in writing, and subscribed by the party charged: * * * 1. An agreement that by its terms is not to be performed within a year; * * * 4. An agreement for the sale of goods, chattels, or things in action, at a price not less than two hundred dollars, unless the buyer accept and receive part * * * or pay * * * part of the purchase money; * * * 5. * * * for the sale of real property."

Our statute is, in all essential particulars, a copy of the original statute of frauds passed in England in 1677, the preamble of which declared it to be "for the prevention of

[77 Mont. 260.]

many fraudulent practices which are commonly endeavored to be upheld by perjury and subornation of perjury." Similar statutes exist throughout the United States. In discussing this statute, John W. Smith, LL. D., in his work on the "Law of Frauds" said: "It is not within the scope of this work, or the province of the writer, to discuss the legislative wisdom of the statutes, or whether such legislation has not been the actual means of perpetrating more fraud, perhaps many times over, than would or could possibly have been perpetrated without the statutes." (Sec. 311, p. 326.)

As courts have, from the beginning, recognized the fact that the statute may be turned into an instrument of fraud and its original purpose thus perverted, "there has been, from the beginning, a persistent attempt to evade the enforcement of the statutes in individual cases where their enforcement would necessarily result in the infliction of unjust judgments and the judicial sanction of wrong and injustice between man and man." (Smith on Law of Frauds, p. 327.)

Confusion and conflict in the authorities have arisen by reason of the difference in the temperament of judges; some holding to the strict letter of the statutes, let the result be what it may, while others, while imbued with the spirit of the statute and its purpose, refuse to follow it literally if reasonable means are at hand, sanctioned by law, for the rendition of a just and righteous judgment as between the parties. This latter course is made possible in jurisdictions wherein the court has full equitable jurisdiction, as "the statute, neither by its terms, nor by construction, is directed to the illegality of the transactions, as such, but only to the method of proof where proof is required. It is not prohibitory." (*Id.*) "The statute relates exclusively to the procedure and simply formulates a rule of evidence." (Pomeroy on Contracts, "Specific Performance," sec. 70.) "The controlling motive of the statute is one of expediency and convenience, and this motive has always been kept in view by the ablest courts in their work of interpretation. As the primary object is to prevent

mistakes, frauds, and perjuries, by substituting written for oral evidence in the most important classes of contracts, the courts of equity have established the principle, which they apply under various circumstances, that it shall not be used as an instrument for the accomplishment of fraudulent purposes; designed to prevent fraud, it shall not be permitted to work fraud." (*Id.*, sec. 74, p. 104.)

From the application of these principles there early arose in the chancery courts of England the equitable doctrine of "part performance" as a justification for decreeing specific performance, on the theory, not that the court of equity is annulling the statute, but that, in equity and good conscience, such part performance takes the case out of the statute. (*Lester* v. *Foxcroft*, 1 Colles' Par. Cas. 108.) "The doctrine has been adopted in nearly all of the American states." (Pomeroy, above, p. 136.)

Thus in *Wells* v. *Waddell*, 59 Mont. 436, 196 Pac. 1000, this court, in requiring a tenant under an oral lease to pay rental, said: "At the time defendant took possession of the premises the unexpired term of the lease exceeded one year, and therefore there cannot be any doubt that the statute of frauds applied in the first instance, * * * but the decided weight of modern authority and the better reasoning support the view that partial performance under the assignment invalid because not in writing, may render the tenant liable according to the terms of the lease; * * * if that partial performance will take the case out of the statute, *a fortiori* will complete performance do so. The statute of frauds was never intended to cloak fraud, but to prevent it." (See, also, *Edwards* v. *Spalding*, 20 Mont. 54, 49 Pac. 443.)

In *Story* v. *Black*, 5 Mont. 26, 51 Am. Rep. 37, 1 Pac. 1, it appears that a father who was indebted to his son made a parol gift of real estate to the son, who went into possession and made valuable and permanent improvements thereon. Mr. Chief Justice Wade said: "I believe that such a possession takes the case out of the statute of frauds, and that the title

of the donee will be protected in equity, If this were not so, the statute to prevent frauds and perjuries would encourage and protect them." A like ruling was made in *Milwaukee Land Co.* v. *Ruesink,* 50 Mont. 489, 148 Pac. 396.

As no equitable consideration enters into a case for the enforcement of a contract not to be performed within a year, equity will not grant relief when an agreement falls within the first subdivision of our statute above, but that subdivision is no bar to the proof of the agreement here under consideration. "Subdivision 1, *supra,* is applicable to those contracts only which *by their terms* are not to be performed within one year by either of the parties. Therefore, where a contract may be performed by one of the parties within one year, the statute does not apply, especially so where the performance has been fully carried out." (*Ayotte* v. *Nadeau,* 32 Mont. 498, 81 Pac. 145.) Here the mother's performance was complete upon surrender of the child. (*Tuttle* v. *Winchell,* 104 Neb. 750, 11 A. L. R. 814, 178 N. W. 755.)

As to subdivisions 4 and 5, however, the equitable doctrine of part performance does not apply to all such contracts, but "courts of equity decree specific performance of contracts, not upon any distinction between realty and personalty, but because damages at law may not, *in the particular* case, afford a complete remedy." (Sir John Leach in *Adderly* v. *Dixon,* 1 S. & S. 610, quoted in Pomeroy, above, p. 8.) So in this class of agreements, equity will grant specific performance of an agreement concerning personalty, only in those cases where, by reason of the peculiar nature of the consideration for the agreement, the injured party cannot be returned to the situation in which he was at the time the agreement was made, and pecuniary compensation would be inadequate or well-nigh impossible of ascertainment, and this test is applied generally to contracts involving realty as well. (Pomeroy, above, secs. 104 to 114.) Cases such as the one before us fall squarely within this rule, and are generally enforced by courts of equity. (*Best* v. *Gralapp,* 69 Neb. 811,

5 Ann. Cas. 491, 96 N. W. 641, 99 N. W. 837, and cases there cited; *Winne* v. *Winne,* 166 N. Y. 263, 82 Am. St. Rep. 647, 59 N. E. 832; *Brinton* v. *Van Cott,* 8 Utah, 480, 33 Pac. 218, and cases there cited.)

The full performance of the agreement by the mother of the child, and by the child herself, took this case out of the statute of frauds.

7. The defendants further alleged affirmatively that by her [11] failure to assert her rights after the death of Rosamund Vautour and during the life of the wife, plaintiff's intestate was guilty of laches and the statute of limitations ran against her claim.

As the agreement alleged the joint promise of Vautour and his wife, the final consummation of which could only be reached by death, and it appears that at the time of the death of Rosamund Vautour all of the property which had been acquired during his lifetime by their joint and several efforts stood in the name of the wife, there was no reason for asserting a claim against the "estate" of Rosamund Vautour, which was nonexistent. During the lifetime of the wife there was no breach of the agreement, as she could not "leave" a child's share in her estate until death created such an estate. It is therefore apparent that the action was commenced within time. (*Furman* v. *Craine,* 18 Cal. App. 41, 121 Pac. 1008; *Horton* v. *Troll,* 183 Mo. App. 677, 167 S. W. 1081.)

8. The findings of the court and the conclusions drawn therefrom are challenged. For this purpose counsel contend that the findings are based upon the testimony of Mrs. Sherman, mother of the child, and point out at length testimony of witnesses on behalf of the defendants which tends to contradict her testimony and to show that the Vautours during their lifetime did not intend to leave their property to the child, or woman.

The testimony referred to presents but a conflict in the [12, 13] evidence, and, while in cases such as this wherein the proof of the agreement rests largely upon the oral testi-

mony of interested parties as to conversations had a third of a century before the trial, such testimony should be "scrutinized with particular care," and the agreement enforced only "upon a satisfactory showing that it is definite and certain and just" (*Story* v. *Black,* above; *Owens* v. *McNally,* 113 Cal. 444, 33 L. R. A. 369, 45 Pac. 710), we must presume that the court performed this duty, and its findings will not be overturned on appeal unless there is a decided preponderance of the evidence against them, nor when the evidence, fully considered, furnishes reasonable grounds for different conclusions (*Allen* v. *Petrick,* 69 Mont. 373, 222 Pac. 451; *Scott* v. *Prescott,* 69 Mont. 540, 223 Pac. 490), and the burden of showing the insufficiency of the evidence to support the finding is on the party claiming such insufficiency. (*Missoula T. & S. Bank* v. *Northern Pac. R. Co.,* 76 Mont. 201, 245 Pac. 949.)

Here it is not, and cannot be, denied that the mother in 1892 turned her three-year old child over to the Vautours and never thereafter exercised custody or control over her; that the Vautours from that time, until the marriage of the girl in 1905, exercised full dominion and control over her, cared for her, educated her, and treated her as their child, and that, in return, she performed the duties of a natural child and addressed her foster-parents as father and mother; that she took to herself the religion of the Vautours rather than that of her natural mother, and addressed her mother as "Nora," and that, after her marriage, she returned to live with the Vautours, thereafter securing a divorce from her first husband, and even after her marriage to Gravelin she resided with them.

The mother testified that all this was done in compliance with an agreement made between the two Vautours and herself that, if she would give them the child, for whom they had developed a sincere affection throughout two years of close association in their home, they would adopt her as their child, care for her, educate her, and that the child "have everything

they had''; that this agreement was made in the presence of
two witnesses, since deceased, and at a time after she was
divorced from the father of the child and remarried, and when
she was sick and unable to care for the child; that on making
the agreement the Vautours took the child home 'and took
with them her clothes, toys and everything she had.

Gravelin, the husband of Anna, testified that after their
marriage Anna conducted the business affairs of Mrs. Vautour
while they were living with her; this testimony was contra-
dicted by one Mrs. McGuire, with whom Mrs. Vautour lived
at the time of her death and in whose favor she made a will,
which was later set aside on the ground of undue influence
exerted by Mrs. McGuire over the deceased.

For the defense one witness testified that some thirty-odd
years prior to the trial Vautour showed him a piano and stated
that it was given him by Sherman for the care of Anna. Mrs.
Sherman testified that no such transaction was ever had.

A Mrs. Brian, eighty years of age, testified that Mrs. Vautour
had explained to her the presence of Anna in the home by
saying that Mr. Sherman had not wanted the child, and that
she told Mrs. Sherman to leave the child with her; also that
at that time the Vautours had a son, since deceased, of whom
they were very fond, though he was not living at home. Mrs.
Sherman testified that her second husband had no objection
to the child.

One Charles White testified that at about the age of six-
teen Anna became somewhat wild, and Vautour told the wit-
ness Anna would not get any money, and his wife testified
that Vautour told her that Anna thought she was going to get
something, but that she would never get anything on account
of her conduct. It is insisted by counsel for defendants that
this testimony controverts the testimony regarding the agree-
ment. It seems to us rather to support it; it is in the nature
of a declaration of a father, when provoked with his child,
that he will disinherit such child, but fails to do so. It ap-
pears that Anna continued to live with the Vautours, and to

return to them when away, until after the death of Vautour, notwithstanding this ill feeling toward her at the time mentioned.

The marriage certificates issued to Anna and her first and second husband were introduced. In the first, while her name is given as "Anna Vautour," the name of her father is given as "Frank Vautour" and her mother's as "Anna Vautour," maiden name Cook; in the second her father's name is given as John Sherman and her mother's name as Nora "Dorothy." Mrs. Sherman's maiden name was Dougherty, while her second husband's given name was "Will." It does not appear that Anna furnished the information contained in either of these certificates, and the fact that none of the information contained is accurate would seem to indicate that she did not; the certificates, therefore, have little evidentiary value.

The record discloses substantial evidence in support of each of the findings made by the learned trial judge, and, considered in its entirety, the evidence clearly and strongly preponderates in favor of those findings, and they must, therefore, stand as made.

9. In connection with the charge of the insufficiency of the [15] evidence, defendants assert that there is a variance in the pleading and proof, in that it is alleged that the Vautours agreed to will their property to Anna, while the proof is to the effect that the word "will" was not used, but that they agreed that she should have everything on their death.

The allegation is that the Vautours agreed that they would "execute a will whereby plaintiff would receive such property as a natural child * * * would be entitled to receive, and that on their death she would receive a child's share of their estate." Mrs. Sherman testified that the Vautours promised in this connection that "when they should die she could have everything they had." While the complaint alleges an agreement to make a will, it also alleges all of the elements of a contract to adopt, with the accompanying right to take a child's

share of the estate by reason of such agreement. There is here no such variance as will defeat the right of recovery.

10. It is lastly contended that the agreement was without [16] consideration. Counsel base this contention on the alleged showing that there could have been no adoption, heretofore disposed of, and the evidence to the effect that Anna was not all that she should have been; in their brief they say: "Had Anna done the right thing, there might have been a different result; but the plaintiff's case is one which discloses nothing rendered on the part of Anna, no performance on her part," *etc.* This statement is not warranted by the proof. Nothing appears in the record to refute the assertion of plaintiff's witnesses that, up to the time Anna was fourteen to sixteen years of age, she was a diligent, obedient and loving daughter to the two old people, and it does appear that, whatever then happened, it was condoned by again taking her into the home and again treating her as a daughter. What happened to the foster-child might have happened to a natural child; in either instance the parent might cast the child off and cut off her right to take his property, but such an act would not affect the consideration given for their promise, and the fact remains that they did not do so, but, on the contrary, received her back into the home.

Had the Vautours adopted the child, as the court found they agreed to do, in the absence of the making of a will to the contrary, the formal adoption would have carried with it a child's right of inheritance in their property. They made no will, and their property was left to descend by operation of law. Equity considers that done which should have been done, and since the plaintiff's right to take as though a natural child, under the contract of adoption, can be recognized without violating any expressed intention of the deceased to the contrary, the decree awarding the property was just and equitable (*Tuttle* v. *Winchell,* above) and must be sustained.

11. Costs. As the defendant John Lindsay was made a [17] party to this action in his representative capacity only,

[77 Mont. 260.]

and then only that the court might, on rendering judgment, direct the disposition of the property in his hands in such capacity, and as on this appeal this defendant appealed only for the protection of the interests of the remaining or individual defendants and would neither gain nor lose by the determination of the appeal, it would be inequitable to assess costs on appeal against him personally. On the other hand, to assess costs against him as the administrator of the estate of Euphemie Leger Vautour, would be to add the amount thereof to the costs of administration of that estate, and, in effect, to compel the plaintiff to pay the costs incurred by reason of an appeal brought to this court by the opposing party determined in favor of the plaintiff. It is therefore ordered that plaintiff recover the costs of appeal, but that such costs be taxed against the defendants other than John Lindsay, as administrator. The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICE STARK and HONORABLE THEODORE LENTZ, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, absent on account of illness, concur.

MR. JUSTICE GALEN not sitting.